```
                                           FILED
           IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA 02 MAY 31  PM 3:12
                   SOUTHERN DIVISION
                                        U.S. DISTRICT COURT
                                        N.D. OF ALABAMA
                              )
ROBERT RINGO,                 )
                              )
     Plaintiff,               )    CIVIL ACTION NO.
                              )
v.                            )    01-AR-2379-S
                              )
WAL-MART STORES, Inc.,        )
                              )
     Defendant.               )        ENTERED
                                        MAY 31 2002
```

## MEMORANDUM OPINION

Before this court is the motion for summary judgment filed by defendant Wal-Mart Stores, Inc. ("Wal-Mart") in this action, brought by Robert Ringo ("Ringo"), for negligence, malicious prosecution and intentional infliction of emotional distress. This court, having granted Ringo's most recent attorney's motion to withdraw, notes that Ringo is *pro se*, and, as was his choice, did not respond to the motion for summary judgment, nor the brief filed in support of the motion for summary judgment.

**Undisputed Facts**

On May 29, 2000, someone payed for merchandise at the Wal-Mart store in Huffman, Alabama with a starter check drawn on Robert Ringo's closed AmSouth bank account. The handwritten name was "Robert Ringo" and the address was that of Ringo's parents house. Written by a hand different than the one that wrote the name and address was an Alabama non-driver's license

identification card ("I.D.") number, and a telephone number.  The number was that of Ringo's I.D., which he lost at some point before May 29, 2000.  When the phone number was checked by Debrah Russell ("Russell"), Wal-Mart's check handler, it was not in service.  A few days after May 29, the check was returned to Wal-Mart by AmSouth bank because the account on which it was drawn had been closed.

Russell, having been unable to contact Ringo by telephone, notified the Wal-Mart collection center in Tuscaloosa of the returned check.  As required by Alabama law for holders of worthless checks who want to recover the value of the check, the collection center sent a certified letter, which was returned to them unclaimed, to the address on the check.  After another attempt to telephone Ringo at the inoperative phone number, Russell gave to a district attorney in the Jefferson County Worthless Check Unit ("Unit") on November 17, 2000 the check, the unopened certified letter, and an information sheet regarding the dishonored check.  According to the affidavit of Jefferson county district attorney Chuck Jordan ("Jordan"), "the Worthless Check Unit", as opposed to a live person, "determined that there was probable cause to believe that Ringo had issued the check in violation of" the law.  (Jordan aff. at 3)  On December 7, 2000,[1]

---

[1] Russell's affidavit lists the date of this event as November 7, even though it clearly occurred after November 17.  Jordan's affidavit lists the date as December 7.  This court will assume that the discrepancy is due to a mistake in Russell's affidavit.  Either way, whether the actual date is

2

Russell signed a complaint, and later that day a magistrate issued a warrant for Ringo's arrest.

Perhaps in response to the three letters mailed to him by the Unit, Ringo called the Unit and agreed to come down and sign a restitution agreement.  Later that day, Ringo signed such an agreement, on which he listed the address on the dishonored check as his home address, and by which he agreed to pay for the check and related expenses by January 4.  Immediately above the signature line on the agreement is the sentence, "I freely admit I signed and issued the above listed checks as indicated by case numbers."  On January 10, Ringo visited the Unit, and, after seeing the check, disclaimed that he had written it and refused to abide by his restitution agreement.  He was arrested and then immediately released, without ever being held in a cell, photographed, fingerprinted nor even handcuffed.  At a January 24, 2001 hearing, Ringo denied that he ever received starter checks, and asked for a trial.  Because neither Jordan nor Wal-Mart could locate the cashier who had accepted the check; he no longer worked at Wal-Mart; Jordan dropped the charges.

---

December or November has no bearing on the outcome of this case, nor on the instant motion.

3

**Analysis**

This court will examine one at a time Ringo's claims of negligence, malicious prosecution and intentional infliction of emotional distress. Before embarking on this journey, as a threshold matter, this court will first determine whether probable cause existed to arrest Ringo. Considering the evidence submitted by Wal-Mart in a light most favorable to Ringo, Ringo himself has submitted no evidence, this court concludes that probable cause existed to arrest Ringo.

Probable cause requires "[s]uch a state of facts in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty." *Lindsey v. Camelot Music*, 628 So. 2d 314, 315 (Ala. 1993). The statute Ringo was accused of violating proscribes the negotiation of a "negotiable instrument for a thing of value and with the intent, knowledge or expectation that it will not be honored." Ala. Code § 13A-9-13.1. The section further provides that "it is prima facie evidence that the maker or drawer intended, knew or expected, that the instrument would not be honored if...:(1) [t]he maker or drawer had no such account with the drawee at the time the negotiable instrument was negotiated..." *Id*. At the time the Unit, presumably Jordan, made the probable cause determination, it knew, or reasonably believed, that, a person bearing Ringo's

4

I.D., an I.D. that contains Ringo's photograph, negotiated a check on a closed account.  Based upon this evidence, no reasonable finder of fact could conclude other than that Jordan had both an honest and strong suspicion that Ringo violated the section cited above.  Finally, this court notes that even though probable cause had been found in November, Ringo was arrested only after he reneged on his restitution agreement in January.

Though Ringo was not required to respond to Wal-Mart's motion for summary judgment, the deadline for which the court extended upon Ringo's motion, such a response might have helped this court discover why Ringo believes he is entitled to recover under a theory of negligence.  Absent such help, this court has tried its best to conjure up some theoretical duty that Wal-Mart owed to Ringo.  The only duty it can come up with is a "duty to exercise care to not report to the district attorney false information regarding dishonored checks and their makers."  Assuming that such duty exists, there is no evidence that any of the information Wal-Mart, through Russell, reported to Jordan was false.  As such, Wal-Mart breached no duty to Ringo.  Because no reasonable finder of fact could find that Wal-Mart breached no duty to Ringo, his negligence claim is due to be dismissed.

"The elements of malicious prosecution are: (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and

5

(5) damage." *Cutts v. American United Life Insurance Co.*, 505 So. 2d 1211, 1214 (Ala. 1987). Due to Ringo's above noted inability to prove lack of probable cause, his malicious prosecution claim must fail.

The tort of Intentional Infliction of Emotional Distress, known in Alabama as outrage, was first recognized in Alabama in *American Road Service v. Inmon*, where the court required a plaintiff to prove extreme conduct, which it defined as "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 394 So. 2d 361, *at* 365 (Ala. 1980).

Though Alabama recognized the tort, it reversed the trial court's award to Inmon because the "case [did] not bring it within that cause of action." *Id.* The facts that Alabama found not egregious enough were; phone calls "calculated to destroy [Inmon's] emotional tranquility," sending Inmon to Austin to "keep him off balance," and a "gestapo-like" interrogation. The court went on to adopt from the Restatement (Second) of Torts that "[t]he actor is never liable, for example, where he has done no more than to insist on his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id. quoting* Restatement (Second) of

6

Torts § 46, Comment (g) at 76.²

The question before this court in deciding the summary judgment motion is whether, considering all the evidence in a light most favorable to Ringo, can Ringo satisfy all of these elements of outrage? The answer is a resounding "no." The act predicate for Ringo's outrage claim is that Wal-Mart "caused Plaintiff to be falsely and wrongfully arrested and prosecuted." (Compl. at 6). No reasonable finder of fact could find that the acts taken by Wal-Mart went "beyond all possible bounds of decency," nor that they were "atrocious and utterly intolerable in a civilized society." As such Ringo's claim of outrage fails.

Because no reasonable finder of fact could find for Ringo on any of his three claims, summary judgment will be entered for Wal-Mart by separate order.

DONE this 31st day of May, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

² Though Alabama has adopted some aspects of the restatement, Alabama has expressly held that it has not adopted all of it. *Continental Casualty Insurance Co. v. McDonald*, 567 So. 2d 1208, at 1220 (Ala. 1990).